OPINION
Plaintiff-appellant, Lou Buren, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Karrington Health, Inc. ("Karrington"), Karrington president, Pete Klisares, and Karrington CEO, Richard Slager.
The instant appeal arises out of plaintiff's employment with Karrington. In late June 1997, plaintiff accepted the position of vice president of marketing with Karrington. Plaintiff moved his family from Redmond, Washington to take the position and began his new job on July 17, 1997. However, plaintiff's tenure with Karrington was short-lived. In mid-February 1998, Karrington asked plaintiff to resign. When plaintiff refused to resign, he was fired effective March 10, 1998.
On March 3, 1998, plaintiff filed a complaint in the Franklin County Court of Common Pleas alleging that he had been wrongfully terminated from his employment at Karrington. As amended, plaintiff's complaint included claims for breach of contract and promissory estoppel against Karrington and a claim for retaliation against Karrington, Klisares and Slager.
On December 17, 1999, Slager and Klisares moved for summary judgment on plaintiff's claims against them. On December 22, 1999, Karrington moved for summary judgment on plaintiff's claims against it. Plaintiff subsequently filed memoranda opposing defendants' motions for summary judgment and defendants filed reply briefs. On February 16, 2000, plaintiff moved to strike those portions of defendants' reply briefs that addressed plaintiff's claim for retaliation.
On May 8, 2000, the trial court rendered a decision in which it denied plaintiff's motion to strike, granted summary judgment for Karrington on plaintiff's breach of contract claim and for Karrington, Klisares and Slager on plaintiff's retaliation claim, and denied Karrington summary judgment on plaintiff's promissory estoppel claim.
On October 30, 2000, plaintiff's promissory estoppel claim against Karrington came on for trial. At the close of plaintiff's case on November 3, 2000, Karrington moved for a directed verdict. The trial court granted Karrington's motion and, on November 20, 2000, entered a final judgment for defendants in the case. Plaintiff appeals therefrom assigning the following errors:
 I. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT KARRINGTON ON PLAINTIFF'S CLAIM FOR PROMISSORY ESTOPPEL BASED ON EMPLOYMENT UNTIL RETIREMENT.
 II. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT KARRINGTON ON PLAINTIFF'S CLAIM FOR PROMISSORY ESTOPPEL BASED ON EMPLOYMENT FOR THREE YEARS.
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT KARRINGTON ON PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON EMPLOYMENT FOR THREE YEARS.
 IV. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' REPLY MEMORANDA IN SUPPORT OF SUMMARY JUDGMENT.
 V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS KARRINGTON, SLAGER AND KLISARES ON PLAINTIFF'S CLAIM FOR RETALIATION.
Plaintiff's first and second assignments of error will be addressed together, as both challenge the trial court's granting of a directed verdict for Karrington on plaintiff's promissory estoppel claim.
A trial court's ruling on a motion for directed verdict will not be reversed on appeal if the evidence adduced at trial and the facts established by admissions in the pleadings and in the record, construed most strongly in favor of the non-moving party, will only permit reasonable minds to reach a conclusion adverse to that party. Brown Motor Sales, Inc. v. Keeley (Sept. 30, 1996), Lucas App. No. L-95-330, unreported. Neither the weight of the evidence nor the credibility of the witnesses is before the trial court when ruling on a motion for a directed verdict. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275.
Plaintiff's promissory estoppel claim arises under Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, and its progeny. Under Ohio law, an employment contract that does not include a specific term of duration gives rise to an employment-at-will relationship. Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249, syllabus; Andres v. Drug Emporium, Inc. (Aug. 30, 2001), Franklin App. No. 00AP-1214, unreported. An employment-at-will relationship may be terminated by either party without cause and for any reason or no reason, so long as the termination is not otherwise contrary to law. Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, 541. However, in Mers, the Ohio Supreme Court recognized a promissory estoppel exception to the employment-at-will doctrine for circumstances in which an employer has made representations or promises of continued employment to an employee. Id. at 104. In order for an employee to prevail on a promissory estoppel claim in an at-will employment setting, it must be shown that (1) the employer made a specific promise or representation of continued employment, (2) the employee actually relied upon the employer's promise or representation, (3) the employee's reliance was reasonable and foreseeable, and (4) the employee was actually injured by his reliance. Mers, at 105.
In the present case, plaintiff relies on two separate statements by Knutson to support his promissory estoppel claim: (1) an oral statement that he alleges was a promise of employment until retirement; and (2) a written statement that he alleges was a promise of three years of employment. The trial court concluded that neither statement could be construed as a specific promise of continued employment. Plaintiff's first assignment of error challenges the trial court's conclusion that the oral statement could not be understood as clear promise of employment until retirement, and his second assignment of error challenges the trial court's conclusion that the written statement could not be read as clear promise of employment for three years.
Initially, Karrington asserts that plaintiff's reliance upon any statements by Knutson was unreasonable, as Knutson did not have the authority to reach a final agreement without the approval of Slager and Klisares. In support of this position, Karrington asserts that plaintiff admitted at trial that Knutson always made it clear to him that he did not have the authority to reach an agreement without getting approval from Slager and Klisares. We find no merit to this claim. The portions of the transcript to which Karrington points indicate only that, when plaintiff left Columbus following his second visit, no agreement had been reached because Knutson indicated that Slager and Klisares had to approve plaintiff's $125,000 salary. There is no admission by plaintiff that he understood that Knutson was without authority to make an employment offer generally. In fact, plaintiff testified that, when Knutson first offered him the job with Karrington, he asked Knutson whether he was authorized to make such an offer and Knutson responded: "This is my job. This is what I'm supposed to be doing."
With respect to the oral promise, plaintiff contends that, in June 1997, Karrington paid for him to fly to Columbus for a three-day visit to learn about the company and to discuss the possibility of his coming to work for Karrington as vice president in charge of marketing. On the second day of plaintiff's visit, plaintiff was given a tour of Columbus. After the tour, plaintiff visited the home of Karrington's senior vice president of operations, John Knutson. Plaintiff testified that, while he was at Knutson's home, he and Knutson sat on Knutson's deck, drank beer, smoked cigars, and "talked about life and talked about Karrington, talked about his future and my future and how [Knutson] envisioned that to go." During this discussion with Knutson, plaintiff told Knutson that, if he took the job with Karrington, he wanted his move from Redmond, Washington to Columbus to be his last move. Plaintiff furthered explained to Knutson that he would not want his job performance at Karrington to be evaluated for three years, as it would take that long to build a marketing department. According to plaintiff, Knutson responded, "if you could do [for Karrington what you did for your current employer] you would be here forever." Plaintiff asserts that he understood Knutson's statement to be a promise of employment until retirement so long as his job performance was satisfactory.
Plaintiff is correct that a specific promise of employment until retirement may, if made under circumstances in which reliance upon the promise is reasonable, support a promissory estoppel claim under Mers. See Helmick v. Cincinnati Word Processing, Inc. (1989), 45 Ohio St.3d 131,136-137 (reversing a grant of summary judgment for an employer, where the employee put on evidence that her employer had promised her continuing employment for as long as her job performance was good). However, discussion of future career development or vague promises of future benefits or opportunities will not support a promissory estoppel claim. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 110-111.
In Lake v. Wolff Brothers Supply, Inc. (Nov. 10, 1993), Cuyahoga App. No. 63959, unreported, the Eighth District Court of Appeals decided a case with facts remarkably similar to the instant case. In Wolff Brothers, the plaintiff alleged that his former employer had promised him long-term employment during pre-employment negotiations, when the employer stated, "[d]on't worry. If you do this well, you will have this position forever," and "[w]ith this kind of partnership, you will have a job until you retire." The Eighth District found that the employer's statements were too vague to constitute specific promises of employment until retirement. Similarly, we conclude that Knutson's statement, that if plaintiff could do for Karrington what he had done for his current employer he would "be here forever," can only be characterized as a generalized statement of possible future career opportunities, and cannot reasonably be understood as a clear promise of employment until retirement. Further, given the setting in which the statement was made, a casual conversation at Knutson's home over beer and cigars, plaintiff could not have reasonably relied upon Knutson's statement.
As noted, plaintiff also argues that his promissory estoppel claim is supported by a written promise. Specifically, plaintiff contends that a "Letter of Understanding" sent to him by Knutson on June 17, 1997, as the parties were concluding their employment negotiations, contains a promise of three years of employment. The "Letter of Understanding" provides in relevant part:
 The terms that we propose for your employment as Vice President-Marketing are as follows:
 Salary guarantee @ $125,000 annually for three (3) years.
Plaintiff argues that the relevant clause in the Letter of Understanding is ambiguous, but can reasonably be interpreted as a promise of three years of employment at a salary of $125,000 per year. Thus, according to plaintiff, there was sufficient evidence to create a jury question on his promissory estoppel claim and the trial court erred in granting a directed verdict for Karrington on that claim. In response, Karrington argues that the relevant clause unambiguously refers only to a salary guarantee, and the trial court was correct in concluding that the letter cannot reasonably be construed as a promise of three years of employment.
While Karrington's reading of the clause as referring only to salary is plausible, it is certainly not the only reasonable reading of the clause. In fact, given that the clause contains the words "annually for three (3) years," Karrington's position that the clause is not reasonably susceptible of being read as a promise of three years of employment is not well-taken. In short, the clause is plainly ambiguous and its meaning must be determined by reference to extrinsic evidence.
While not relevant for purposes of this appeal, we note that plaintiff has pointed to several pieces of extrinsic evidence that seem to provide support for his reading of the Letter of Understanding. Specifically, plaintiff testified by affidavit that he made it clear to Knutson during the negotiations which culminated in his hiring that a guarantee of three years of employment and a salary of $125,000 a year would be required to get him to move his family from Washington to Ohio. According to plaintiff's affidavit, Knutson initially balked at the salary figure but stated that the three years was "doable." Plaintiff also points to a copy of the Letter of Understanding which he obtained through discovery. The copy in question was sent by Slager to Klisares with the relevant language underlined and a handwritten note which provides: "Do we have a 3 year deal with Lou?"
Given our conclusion that the relevant clause in the Letter of Understanding is ambiguous, a question of fact exists as to whether Karrington promised plaintiff three years of employment, Fairchild v. Comgas, Inc. (Jan. 9, 1990), Franklin App. No. 89AP-525, unreported, and the trial court erred in granting a directed verdict for Karrington on plaintiff's promissory estoppel claim.
Plaintiff's first assignment of error is overruled, and his second assignment of error is sustained.
Plaintiff's third assignment of error challenges the trial court's grant of summary judgment for Karrington on plaintiff's claim for breach of contract.
Because plaintiff's third assignment of error challenges the trial court's grant of summary judgment pursuant to Civ.R. 56, we review the trial court's determination independently and without deference, Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, applying the same standard as the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. In accordance with Civ.R. 56, summary judgment is appropriate only where, viewing the evidence most strongly in favor of the non-moving party, no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64.
Plaintiff's breach of contract claim is based upon the same clause in the Letter of Understanding on which plaintiff relies to support his promissory estoppel claim. Plaintiff contends that the Letter of Understanding constituted an offer of employment, which, when accepted by plaintiff, gave rise to an employment contract. Pointing to the "Salary guarantee @ $125,000 annually for three (3) years" clause in the letter, plaintiff argues that the employment contract was at least arguably for a three-year term.
In granting summary judgment for Karrington on plaintiff's breach of contract claim, the trial court concluded that no issue of fact existed as to whether an employment contract for a three-year term existed, as the relevant clause in the Letter of Understanding spoke only to salary and could not reasonably be read to speak to a three-year term of employment. For the reasons discussed in deciding the second assignment of error, we find that the relevant clause is ambiguous; at least one reasonable reading of the clause is that plaintiff was being offered employment for a three-year term at $125,000 per year. Accordingly, a question of fact did exist with respect to plaintiff's breach of contract claim.
Plaintiff's third assignment of error is sustained.
Plaintiff's fourth and fifth assignments of error will be addressed together, as both raise issues related to plaintiff's retaliation claim.
Under his fifth assignment of error, plaintiff argues that the trial court erred in granting Karrington, Klisares and Slager's summary judgment on his retaliation claim. Plaintiff alleges that defendants retaliated against him for refusing to resign from his position with Karrington and for bringing the instant action by maliciously providing companies with whom he had applied for employment with false, negative job references.
The trial court granted summary judgment for defendants on plaintiff's retaliation claim on the grounds that R.C. 4113.71(B) provided defendants with immunity from plaintiff's retaliation claim. However, because we conclude that plaintiff's retaliation claim fails to state a claim under Ohio law, we do not reach the issue of whether defendants are immune under R.C. 4113.71(B).
The only claim for "retaliation" in the employment context recognized under Ohio law arises under R.C. 4112.02(I), which provides:
It shall be an unlawful discriminatory practice:
* * *
 (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.
To state a claim under this provision, the employer's retaliatory action must have been taken in response to an employee or former employee having opposed an unlawful discriminatory practice of the employer or having made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing involving an unlawful discriminatory practice pursuant to R.C. 4112.01 to 4112.07.
Here, plaintiff's retaliation claim does not allege that defendants' actions were taken in response to plaintiff having opposed an unlawful discriminatory practice of defendants, or having participated in some manner in a proceeding involving an unlawful discriminatory practice under R.C. 4112.01 to 4112.07. Consequently, plaintiff's retaliation claim fails as a matter of law.
Plaintiff next argues that the trial court erred in denying his motion to strike the portions of Karrington's, and Slager and Klisares' reply memoranda in support of their motions for summary judgment that argued for summary judgment on plaintiff's retaliation claim. Karrington, and Slager and Klisares, in their initial memoranda in support of their motions for summary judgment, treated plaintiff's retaliation claim as a defamation claim. Accordingly, plaintiff, in his memorandum contra defendants' motions for summary judgment, argued that defendants had not moved for summary judgment on his retaliation claim. Subsequently, defendants, in their reply memoranda in support of their motions for summary judgment, expressly sought summary judgment on plaintiff's retaliation claim on the grounds that no such claim exists under Ohio law. Plaintiff then moved to strike the portions of defendants' reply memoranda addressing his retaliation claim for the first time, arguing that he had not been afforded an opportunity to respond to defendants' argument in favor of summary judgment on his retaliation claim.
It is well-settled that the party seeking summary judgment must expressly delineate each basis upon which summary judgment is being sought in order to provide the opposing party with a meaningful opportunity to respond. State ex rel. Coulverson v. Ohio Adult Parole Auth. (1991), 62 Ohio St.3d 12, 14. In the present case, defendants' failure to address plaintiff's retaliation claim until they filed their reply memoranda in support of their motions for summary judgment plainly left plaintiff without the ability to respond to defendants' new argument. Therefore, the trial court should have granted plaintiff's motion to strike. However, because plaintiff's retaliation claim fails as a matter of law, we find that the trial court's failure to grant plaintiff's motion to strike was harmless error.
Plaintiff's fourth and fifth assignments of error are overruled.
Having overruled plaintiff's first, fourth and fifth assignments of error, but having sustained plaintiff's second and third assignments of error, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court. On remand, plaintiff must be granted a new trial on his promissory estoppel and breach of contract claims based on the Letter of Understanding, and the jury should be instructed on both claims in the alternative. Additionally, should Karrington attempt to raise termination for cause as a defense to plaintiff's claims, it should be permitted to do so. At oral argument before this court, plaintiff conceded that Karrington would be entitled to raise the defense of termination for cause, while maintaining that Karrington would be unable to prove such defense.
Judgment affirmed in part, and reversed in part and cause remanded.
BRYANT and LAZARUS, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.